IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **COLBY DEMETRIUS KEEL,** ) | |
| Petitioner, ) | Civil Action No. 7:20cv00003 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| **HAROLD W. CLARKE,** ) | By: Michael F. Urbanski |
| Respondent. ) | Chief United States District Judge |

Colby Demetrius Keel, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his Frederick County Circuit Court convictions entered June 13, 2017, for possession of heroin with intent to distribute, possession of fentanyl with intent to distribute, and distribution of fentanyl. The respondent has filed a motion to dismiss, to which Keel has responded, making this matter ripe for consideration. After reviewing the record, the court concludes that respondent's motion must be granted, and Keel's petition must be dismissed for the reasons stated below.

I.

A grand jury sitting in the Circuit Court of Frederick County indicted Keel on July 28, 2016, for possession of heroin with intent to distribute and distribution of fentanyl, both in violation of Virginia Code § 18.2-248. On that same date, Keel appeared in court with his counsel, Silvester, and set the matter for further proceedings on September 2, 2016, a term date. On September 2, 2016, Keel waived trial by jury, in writing, and the case was set for a bench trial on October 21, 2016. On October 6, 2016, the parties submitted an agreed joint order, endorsed by defense counsel and the Commonwealth's Attorney, continuing the case to be re-set at the November 10, 2016, term date, because the Commonwealth anticipated

filing additional charges against Keel.[1] On motion of the defendant, the matter was continued from November 10 to the November 29, 2016, term date.[2] Again, on motion of the defendant, the matter was continued to the term date on December 15, 2016. On December 15, 2016, the case was set for trial by jury on March 31, 2017, and the court entered a pretrial order. Circuit Court Record (CCR) at 75–78.

Except for the agreed joint order entered October 6, the continuance orders entered on each date between July 28, 2016, and December 15, 2016, reflected that Keel was present in the courtroom with his counsel. The orders, most endorsed by counsel,[3] also reflected that Keel waived his speedy trial rights between the date of each order and the next scheduled court date. CCR at 50, 56, 71, 72, 74, and 75–78.

On January 18, 2017, the Commonwealth's Attorney communicated a plea offer to counsel, with terms that the offer be accepted by March 1, 2017, or the Commonwealth intended to indict on additional charges. Silvester met with Keel on January 25, 2017, to discuss the plea offer, recommending that Keel accept it. Keel was not happy about the plea offer. The next day, Keel telephoned Silvester's office and asked him to withdraw. Silvester filed a motion to withdraw on January 27, 2017, which the court granted on January 30, appointing attorney Ransom to represent Keel. CCR at 80–83. Ransom then requested a

---

[1] In the motion to withdraw as counsel, which Silvester later filed in January 2017, he indicated that the reason for the continuance in October was that the Commonwealth demanded a jury trial and did not agree to a bench trial. Circuit Court Record (CCR) at 80.

[2] In his motion to withdraw, Silvester referenced a single continuance to November 20, 2016, which was continued again because of questions about potentially exculpatory discovery. CCR at 80.

[3] The order entered November 10, 2016, was not endorsed by counsel. The court noted that endorsement was waived under Rule 1:13 of the Rules of the Supreme Court of Virginia. The order reflected, however, that Keel was present in person at the hearing. CCR at 72.

continuance because he needed time to interview Keel's alibi witness, Winnie Nerestant, who was incarcerated three and a half hours away. The court granted the continuance on February 23, 2017, and set the matter for term day, March 9, 2017. On March 9, the grand jury indicted Keel with an additional charge, possession with intent to distribute fentanyl, and the jury trial for all three indictments was scheduled for May 25, 2017; a new pretrial order was entered on March 10, 2017. CCR at 84–87, 98–101.

Attorney Ransom filed a motion to suppress, a notice of alibi defense, and a motion in limine. He interviewed Ms. Nerestant. On or about May 3, 2017, Ransom met with Keel and advised him that Ms. Nerestant no longer wished to testify on Keel's behalf, and if forced to do so, her testimony would not be favorable. On May 23, 2017, Keel signed a plea agreement on the advice of counsel. Among other provisions, the plea agreement called for Keel to plead guilty to all three charges; on each of the possession with intent to distribute charges, he would receive five years, all suspended, and on the distribution of fentanyl, he would receive ten years, with one and a half years suspended, for total time to serve of eight and a half years, followed by five years of probation. The agreement also contained a statement that Keel was satisfied with Mr. Ransom's services. CCR at 140–143.

At the plea hearing, the Commonwealth summarized the evidence against Keel as follows:

> [O]n April 20, 2016, [Palmer] bought what she believed to be heroin from the Defendant. She arranged for the Defendant, whom she knew as Blue, to come to her grandparent's home . . . in Frederick County, to deliver the drug to her. Her communications were by cell phone. She would testify that approximately five minutes after arranging for the sale, the Defendant arrived at her grandparent's home and delivered the

3

drug to her, after which she paid the Defendant the agreed upon price of $50.

. . . she injected the substance and passed out. The next thing she remembered was being tended to by emergency personnel who responded to her location after her mother called 911 [after finding] Ms. Palmer was unconscious in the bathroom.

Deputies arrived at their home. They were granted permission to search it and pursuant to that search a number of items consistent with intravenous drug use were found and collected by the deputies.

Ms. Palmer was transported to the Winchester Medical Center, where she consented to a blood draw. The blood was sent off to the Division of Forensic Science and it was determined that her blood contained fentanyl, a schedule-II controlled substance, pursuant to Certificate of Analysis N163292. She also consented to allow investigators to access her cell phone. Upon doing so the investigators were able to locate text message exchanges between Ms. Palmer and Blue who sold her the drugs. Ms. Palmer also allowed the investigators to use her phone to communicate with Blue. The investigators, assuming the role of Ms. Palmer, [texted Blue] using Ms. Palmer's cell phone and requested another drug purchase. The person they texted agreed . . . that the sale would occur at Sheetz on Route 522 North [at an agreed time].

Ms. Palmer had advised them in the past episode Blue was driving a white van.

Members of the Task Force took positions around the Sheetz and waited until the seller arrived. At the arranged time a white van appeared in the parking lot of Sheetz. There were two individuals inside and neither of the individuals got out of the vehicle. All the while investigators continued to communicate with the seller using Ms. Palmer's cell phone.

Investigator Foster . . . instructed the [Task Force] to detain the white van's occupants at that time, which they did. The defendant, Colby Keel, was the driver of the van. Investigator Foster [then] called the phone number . . . identified as Blue on Ms. Palmer's phone. At that time the phone possessed by [Keel] rang indicating that he [was the person they had been texting].

4

CCR at 371–72.  On searching the van, investigators recovered four capsules of brown powder which appeared to be heroin, and on analysis, were found to contain fentanyl or a combination of fentanyl and heroin.  The female passenger in the van, Winnie Nerestant, claimed that the capsules were hers, and that Keel was only texting what she told him to say.  CCR at 4.  When investigators showed Ms. Palmer Keel's picture the next day, she identified him as the person she had bought drugs from on April 20.  CCR at 372.

The trial court conducted a full colloquy with Keel before accepting his plea, including inquiring if Keel was satisfied with his attorney.  After hearing the statement of facts, the court accepted the plea agreement and imposed the agreed upon sentences.  CCR at 734–754.  The final order was entered June 13, 2017, and Keel did not appeal.

On May 15, 2018,[4] Keel filed a petition for writ of habeas corpus in the Frederick County Circuit Court, alleging ineffective assistance of counsel in failing to interview Nerestant earlier, failing to protect Keel's speedy trial rights and waiving those rights against Keel's instructions, and failing to object to the Commonwealth's failure to abide by the speedy trial statute.  By opinion and order entered January 23, 2019, the court denied Keel's petition.  Keel appealed to the Supreme Court of Virginia, which found no reversible error and refused the petition on October 21, 2019.  Keel filed the current § 2254 petition on December 27, 2019, when he placed it in the institutional mail at Coffeewood Correctional Center.

---

[4] The Circuit Court received and filed the habeas petition on May 22, 2018, but Keel's state petition stated under oath that it was placed in the institutional mail at Coffeewood Correctional Center on May 15, 2018.

## II.

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. As applicable to this case, that statute of limitations runs from "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. Section 2244(d)(2) tolls the statute of limitations during the time in which a "properly filed application for State post-conviction or other collateral review . . . is pending."

The final judgment order was entered on June 13, 2017. Under Virginia law, Keel had thirty days in which to appeal. Because he did not appeal, the judgment became final when the thirty days expired, on July 13, 2017. The 365-day limitation period began to run at that time. When he filed his state petition for habeas on May 15, 2018, tolling the statute, 306 days had run, leaving 59 days left on the statute. When the Supreme Court of Virginia refused the petition for appeal on October 21, 2019, Keel had 14 days to petition for rehearing under Rule 5:20(b)(1) of the Rules of the Supreme Court of Virginia. See Rouse v. Lee, 339 F.3d 238, 244–45 (4th Cir. 2003) (en banc) (holding that "an application for collateral review remains pending during the time to seek further review in state courts," but because a petition for rehearing is not available for motions for appropriate relief in criminal cases under North Carolina law, petitioner was not entitled to the benefit of the time for filing a rehearing petition). Unlike the petitioner in Rouse, Keel is in Virginia, where he has the right to pursue his state post-conviction remedies through that last step, a petition for rehearing, which gave him an additional fourteen days. Until November 4, 2019, arrived without a petition for rehearing being filed, the statute of limitations remained tolled.

6

The statute began running again on November 4, 2019, with fifty-nine days remaining. The statute expired on January 2, 2020, the day the petition was received in the clerk's office. Having been placed in the institutional mail before that date, the petition was timely filed. Further, respondent acknowledges that Keel has exhausted his claims for ineffective assistance of counsel.

### III.

Once the procedural hurdles of timeliness and exhaustion have been satisfied, a federal court may grant relief on a state habeas claim adjudicated on the merits in state court only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded (sic) disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

Likewise, the federal court must presume that the state court's factual findings are correct, whether from the record or from an evidentiary hearing. This presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." Schriro, 550 U.S. at 473. If the standard seems "difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 102.

The Frederick County Circuit Court rendered the last reasoned state court opinion addressing Keel's claim of ineffective assistance of counsel, as the Supreme Court of Virginia summarily refused Keel's petition for appeal. Therefore, the court "looks through" the denial of appeal and reviews the reasoning of the circuit court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that when "there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim" must be presumed by the federal habeas court to rest upon the same ground). The deferential standard of review prescribed by § 2254(d), discussed above, will apply in reviewing the circuit court's opinion.

All Keel's claims allege ineffective assistance of counsel. When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must meet both prongs of the test, not just one. The Strickland standard is "doubly deferential" in the context of a

8

habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under Strickland. Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016); Cullen v. Pinholster, 563 U.S. 170, 190 (2011). In other words, federal courts on habeas review are required to give the benefit of the doubt to both the state court and the defense attorney. Woods, 136 S. Ct. at 1151. Applying the required legal standards, the court finds that the state court's decision on each of Keel's claims was not unreasonable.

## A. Failure to Interview Ms. Nerestant Earlier

The state habeas court held that Keel failed to establish deficient performance or prejudice on this claim. Regarding performance, on December 22, 2016, Silvester requested a witness subpoena for Ms. Nerestant to appear at trial; he made the request one week after the trial date was set, three months before trial, which left ample time to interview her well before the trial date. CCR at 75–79. Further, as the habeas judge noted, the attorneys already knew what Keel expected Nerestant to say at court; Keel had provided two affidavits from Ms. Nerestant, both corroborating what she told police officers at the scene, according to the probable cause affidavit. The state court's determination that counsel was not deficient in failing to interview her months before the trial date is reasonable, especially when one considers that a primary reason for interviewing witnesses early is to determine what they have to say. Here, defense counsel had ample information about what she had said at the scene and in two different affidavits afterwards. On this prong alone, Keel's ineffective assistance claim must fail.

The court recognizes that Keel's underlying complaint is really that Nerestant changed her mind about testifying before his trial date arrived. That turn of events cannot

9

be blamed on defense counsel. As the state habeas court noted, predicting the future behavior of a witness is beyond the professional skills required of counsel. Redus v. Swenson, 468 F.2d 606, 607 (8th Cir. 1972) ("Although the Constitution guarantees the right to competent counsel, we cannot expect counsel to be omniscient or clairvoyant."). Likewise, the state court reasonably asserted that Ms. Nerestant may well have decided not to testify for Keel whenever the trial date occurred; the prospect of taking an oath and testifying in open court, against her own interests, tends to seem less appealing as a firm trial date grows closer. Further, the state court reasonably concluded that Nerestant's testimony was not reasonably likely to change the outcome of the trial, as the evidence was sufficient to support Keel's conviction at least as a principal in the second degree.

Because the state court reasonably concluded that Keel has shown neither deficient performance nor prejudice, the court must dismiss claim 1 of his petition.

### B. Waiving and Failing to Preserve Speedy Trial Rights

In his second and third claims, Keel again raises ineffective assistance of counsel. First, he alleges that counsel waived his speedy trial rights against his express instructions, and second, he claims that counsel failed to make the Commonwealth comply with the speedy trial statute. This court will treat these claims together, as did the state habeas court. As with the previous claim, the state court reasonably found neither deficient performance nor prejudice.

The state habeas court cited New York v. Hill for the proposition that counsel has full authority to manage the conduct of trial, including scheduling matters, and that counsel has no duty to consult a defendant about waiving a statutory speedy trial limit. 528 U.S. 110,

115 (2000). The state court correctly stated and applied the federal law announced by the Supreme Court. As a matter of law, the state court's determination that this was not deficient performance is reasonable.

The state court also reasonably determined, as a matter of fact from the record, that Keel was present when continuance orders were entered, and that he consented to the waiver of his speedy trial rights. This factual determination is likewise inconsistent with finding deficient performance. Finally, each continuance motion was made by the defense, except for one, which was made jointly by the defense and the Commonwealth. As noted by the state habeas court, there was no Commonwealth action for defense counsel to object to, because the defense was seeking the continuance. Under Virginia Code § 19.2-243(4), trial delay caused by defense counsel's request for continuance or concurrence in Commonwealth's request for continuance does not count towards the speedy trial limit. Therefore, the speedy trial statute had not run, whether Keel "waived" the statute or not, and the trial court had jurisdiction to accept his guilty pleas, contrary to Keel's assertion.

The state court's determination that Keel has not shown any prejudice from counsel's failure to insist on strict compliance with the speedy trial statute is also reasonable. If confronted with a possible speedy trial problem, the Commonwealth could simply have chosen to nolle pros the case and refile the charges.

Because the state court reasonably determined that Keel has shown neither deficient performance nor prejudice, this court must dismiss the second and third claims of his § 2254 petition.

## IV.

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). Keel has not made a substantial showing of the denial of a constitutional right.

For the foregoing reasons, the court will grant respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

**ENTER:** This 8th day of February, 2021.

Michael F. Urbanski
Chief U.S. District Judge
2021.02.08 10:35:25
-05'00'

_____
Chief United States District Judge